UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MEGAN GOHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-866-GMB |
| | ) |
| EB, LLC d/b/a ON TAP, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Megan Gohn filed the instant complaint against Defendant EB, LLC d/b/a On Tap ("On Tap") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Doc. 1. The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 22. Before the court is On Tap's Motion for Summary Judgment. Doc. 42. On Tap filed a brief (Doc. 43) and evidence (Docs. 42-1 to -23) in support of its motion. Gohn filed a brief in opposition to the motion (Doc. 46) and also filed a motion to strike three of On Tap's exhibits. Doc. 45. On Tap opposed the motion to strike (Doc. 48) and also filed a reply brief in support of its motion for summary judgment. Doc. 50. The motion for summary judgment and motion to strike are fully briefed and ripe for decision. For the reasons the follow, both motions are due to be denied.

## I.  MOTION TO STRIKE

Gohn moves to strike the declaration of Leah Halloran (Doc. 42-22), the calendar Halloran generated by analyzing cashed checks from On Tap to Gohn and Gohn's time sheets (Doc. 42-11), and the cashed checks themselves (Doc. 42-8). Gohn contends that the court should exclude this evidence because On Tap failed to disclose Halloran as a witness in its Rule 26 disclosures. Doc. 45 at 1–3.

Federal Rule of Civil Procedure 26 imposes various duties on litigants to disclose information during discovery.  In general, Rule 26(a)(1)(A) requires initial disclosure of the name of each individual likely to have discoverable information that may be used to support a claim or defense, along with an identification of the general subjects of that information.  Parties also must supplement their Rule 26 disclosures at appropriate intervals. Fed. R. Civ. P. 26(e)(1).  Rule 37 provides the consequences for a party's failure to follow these rules.  The default sanction for the failure to comply with Rule 26(a) is the exclusion of the undisclosed evidence, but district courts possess broad discretion under Rule 37(c). *See Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004) (stating that "[t]he district court may impose other appropriate sanctions in addition to or in lieu of the evidentiary exclusion").  Under Rule 37(c)(1), a party who fails to provide the information required under Rule 26(a) or (e) is not allowed to use that information unless the failure to disclose is substantially justified or harmless.

The failure to disclose Halloran does not require sanctions because On Tap was not required to disclose her as a witness under Rule 26 in the first instance. Halloran does not possess independent discoverable information. Instead, she performed a ministerial task of compiling a calendar using evidence that was produced in discovery and is not disputed. And even if she should have been disclosed, the failure to disclose was harmless in as much as her declaration merely recites the process she used to create the calendar reflecting the dates Gohn worked, the time Gohn clocked in and out, and any check she received for her work as the keyholder. None of the documents supporting this analysis are disputed. In fact, Gohn does not dispute the accuracy of the entries on the calendar. For these reasons, the motion to strike will be denied.

## II.  MOTION FOR SUMMARY JUDGMENT

**A.     Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The purpose of summary judgement is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d

1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

**B.     Statement of Relevant Facts**

Gohn worked as a bartender at On Tap from February 2014 until December 20, 2016. Doc. 42-14 at 30. On Tap paid bartenders $2.13 per hour plus any tips they made while working. Doc. 42-12 at 4. If a bartender did not earn enough tips for her total compensation to reach the minimum wage of $7.25 per hour, On Tap made up the difference. Doc. 42-14 at 55.

Although Gohn sometimes worked during the daytime, she primarily worked night shifts.[1] Doc. 42-14 at 6. On Sunday through Thursday, the night shift began

---

[1] Gohn does not allege that On Tap inadequately paid her for her work on the day shift.

5

at 5:00 p.m. Doc. 42-12 at 4.  On these days On Tap closed to customers at midnight, and the night shift ended when the employees finished cleaning and clocked out. Doc. 42-12 at 4.  On Friday and Saturday nights, last call for drinks was at 1:30 a.m. and the bar closed to customers at 2:00 a.m. Docs. 42-12 at 4 & 42-14 at 20.  After every night shift, the bartenders were responsible for cleaning the bar area so that the employees in the morning could begin work when they arrived. Doc. 42-12 at 5. Their cleaning duties included wiping down the bar and bar tables, removing the bar mats, and mopping and sweeping the bar area. Doc. 42-14 at 25 & 45; Doc. 42-12 at 5–6.  Before leaving for the night, the bartenders also had to throw away any leftover fruit, cap the beer tap and liquor bottles, clean the beer tray drain, stack the napkins, and place the barstools on top of the bar. Doc. 42-12 at 5–6.

If no manager would be present at closing, one of the other employees had to assume the role of "keyholder" for the night. Docs. 42-14 at 7 & 42-12 at 6.  The keyholder was the fill-in manager and became responsible for clocking out all employees, locking the bar, and turning on the alarm system. Docs. 42-14 at 7 & 42-12 at 6.  On Tap paid the keyholder an additional $50[2] per night for performing these extra duties. Doc. 42-12 at 6.  Gohn frequently served as the keyholder during her employment at On Tap. *See* Doc. 42-11 at 1–19.

---

[2] On Tap sometimes paid Gohn $70 for performing the keyholder duties, but this distinction is not material to the decision at issue.

### 1.     *POS System*

On Tap assigned an employee number to every employee.  The employee entered her number into the Aloha Point of Sale ("POS") system to clock in when she began work and re-entered her number to clock out when her shift ended. Docs. 42-12 at 1–2 & 42-14 at 13.  On Tap maintains that it instructed its employees to complete all of their cleaning duties and count their tips[3] before clocking out. Doc. 42-12 at 6.  When an employee entered her tips into the POS system at the end of the night, the system prompted the employee to clock out. Doc. 42-14 at 18.

Each morning, the managers reviewed the time sheets and tips from the previous day on the POS system to ensure accuracy. Doc. 42-12 at 2.  The managers then compared the credit card receipts to the claimed tips of the servers and bartenders. Docs. 42-12 at 2 & 42-16 at 12.  They also checked the system to see if any of the employees forgot to clock out. Docs. 42-12 at 2 & 42-16 at 23.  If that occurred, the POS system automatically clocked out the employee at 3:30 a.m. Docs. 42-12 at 2 & 42-16 at 12.  To correct the clock out time, the manager either called the employee to determine what time she actually finished working, reviewed video recordings from the bar to see when the employee left, or made an educated guess based on the sales information. Doc. 42-12 at 2; Doc. 42-16 at 12; Doc. 42-17 at 13.

---

[3] Because the customers could tip the bartenders with cash or credit cards, the bartenders were responsible for declaring their tips before clocking out. Doc. 42-14 at 16–17.  The bartenders received their credit card tips in cash when they clocked out. Docs. 42-14 at 17 & 42-12 at 6.

7

When the managers made these after-the-fact changes in the POS system, the system noted them as "edited punches." Doc. 42-12 at 2. The POS system required the manager to enter her employee number before making any of these edits, Doc. 42-12 at 3, and the name of the manager making the change appeared next to the edited punch on the POS system report. Doc. 42-12 at 7. Gohn testified that the "POS system did not prompt employees [when they clocked in] that their time had been altered nor did any names show up on the POS system [to show who edited the punch]." Doc. 46 at 309. Gohn did not see the POS system reports, however, until after she filed this lawsuit. Doc. 46 at 309.

On Tap maintains that all edits in the POS system had to be made within three days of the original entry. Doc. 42-12 at 3. But Lloyd Shaw, a former manager of On Tap, testified that an "edit to a punch time in the POS system could be made at any time" and "[t]here was no three-day limit that prevented a punch time from being changed." Doc. 46 at 312. In fact, Shaw stated that he "changed numerous punch times after a three-day period." Doc. 46 at 312.

2. *Clock Out Meeting*

Sometime in mid-2015, On Tap manager Necole Smith held a meeting with the bartenders. Doc. 42-14 at 18. At that meeting, Smith told them that they needed to be clocked out by midnight or 2:00 a.m., depending on the day, regardless of

8

whether they had finished their cleaning duties at that time.[4] Doc. 42-14 at 18–22; Doc. 42-15 at 1; Doc. 42-20 at 12.  Specifically, Gohn testified that Smith "said to do our checkout first and then finish our cleaning after we were done with our checkout." Doc. 42-14 at 19.  Another former bartender, Caroline Seier, confirmed this directive from Smith.[5] Doc. 42-20 at 12.

After this meeting, Gohn followed Smith's instructions for the remainder of her employment with On Tap.  She would clock out as close to midnight or 2:00 a.m. as possible, and then would finish her cleaning duties. Doc. 42-14 at 20.  Because customers often remained in the bar at closing time, Gohn rarely checked out at exactly midnight or 2:00 a.m., but she would do it as soon as possible after the customers paid their tabs and left. Doc. 42-14 at 24, 42 & 45; Doc. 42-15 at 1.  Gohn and Seier estimated that it took at least 30 minutes to complete their nightly cleaning duties.[6] Doc. 42-14 at 25 & 86; Doc. 42-15 at 13.  Gohn did not keep any record of how long she continued working after she closed out each night. Doc. 42-14 at 21.

---

[4] Stone disputed this testimony and testified that she did not tell Gohn or anyone else to clock out before they finished their work. Doc. 42-16 at 8.  Instead, she maintains that she instructed the staff to try to finish their duties quickly and to pre-clean as much as possible by the last call, which was 30 minutes before closing. Doc. 42-16 at 8.  Stone explained that she had to "get strict about the out the door by 12 and make sure you clock out, you know and don't sit around and drink beer with your friends and forget to clock out, . . . [or] clock out later because [she] got in trouble for that a couple of times." Doc. 42-16 at 9.

[5] Lloyd Shaw, a former manager at On Tap, testified that this instruction came from Craig Beegle, the owner of On Tap, in an effort to reduce labor costs. Doc. 42-17 at 28–29.

[6] Gohn admitted that on slow nights some of these duties could be done while a few customers still were present in the bar. Doc. 42-14 at 25.

### C.     Discussion

Gohn contends that On Tap violated the FLSA by not paying her for all of the time she worked. Doc. 46 at 1–2. She asserts that she was instructed to clock out at a certain time, even if her work was not complete, and then required to finish her work without being paid for that time. Doc. 46 at 13–15. She also contends that On Tap's records are not accurate because the managers could change them after the fact. Doc. 46 at 17–18. On Tap maintains that it is entitled to summary judgment on Gohn's claim for unpaid wages under the FLSA. Doc. 42.

Plaintiffs' claims in this case invoke 29 U.S.C. § 216(b). Doc. 1. Under § 216(b), an employer who fails to pay at least minimum wages to its employees is liable to the affected employees "in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquated damages." 29 U.S.C. § 216(b). Additionally, the FLSA requires an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c).

In a FLSA action for unpaid wages, the plaintiff employee bears the burden of establishing the amount and extent of her uncompensated work. *Anderson v. Mt. Clemons Pottery Co.,* 328 U.S. 680, 687 (1946), *superseded by statute on other grounds* as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir.

1972).[7]  To meet this burden, the employee must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. at 687–88.  Additionally, "a plaintiff must show that the employer had actual or constructive notice of the fact that the uncompensated person was working without compensation." *Higgins v. Food Lion, Inc.*, 197 F. Supp. 2d 364, 368 (D. Md. 2002).

### 1. *Uncompensated Work*

As stated above, FLSA plaintiffs bear the burden of proving that they worked without compensation.  Yet "[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687.  It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment because the employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed. *Id*. "Employees seldom keep such records themselves." *Id*.

If an employer fails to keep accurate records and the employee cannot offer convincing substitutes, "[t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of

---

[7] The parties have relied in briefing on a number of cases relating to an employer's alleged failure to pay overtime.  Because Plaintiff's claim for unpaid wages is analogous, the court uses the same framework of analysis.

uncompensated work." *Id*. Instead, in these situations, any employee can "carr[y] out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. The burden then shifts to the employer to produce evidence of "of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Allen v. Bd. Of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the results be only approximate." *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 471 (11th Cir. 1982) (quoting *Anderson*, 328 U.S. at 688).

Here, Plaintiff has met her burden of showing that she performed work for which she was not properly compensated. Gohn's testimony calls into question On Tap's records in as much as she unambiguously testified that she worked after she clocked out. Doc. 42-14 at 20. If Gohn's testimony is to be believed, as it must be at summary judgment, On Tap did not accurately pay her for the amount of time she worked.

On Tap's arguments surrounding Gohn's testimony are not appropriate at the summary judgment stage. Docs. 43 at 24–30 & 50 at 3–6. Essentially, On Tap argues that the records show that Gohn never clocked out precisely at midnight or 2:00 a.m.,

but instead clocked out after closing time the vast majority of nights, and therefore her testimony should not be believed. Doc. 43 at 22–23. Gohn, on the other hand, explained why she rarely clocked out precisely at closing time—she was waiting on her customers to finish their drinks and sign their checks. Doc. 42-14 at 24, 42 & 45; Doc. 42-15 at 1. Regardless, On Tap asks the court to make an impermissible credibility determination at the summary judgment stage. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The evidence presented by Gohn, which the court accept at the summary judgment stage, establishes that the On Tap's records do not accurately reflect her time on the job.[8]

The inquiry does not end here, however. Gohn also must produce sufficient evidence to show the amount and extent of the uncompensated work "as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. Gohn testified that she worked approximately 30 minutes after she clocked out each night following Stone's

---

[8] The court makes this determination separate and apart from the parties' arguments regarding On Tap's ability to change the POS reports. Regardless of whether the records have been manipulated, her testimony establishes for summary judgment purposes that the records do not accurately reflect the hours she worked.

instruction for the bartenders to clock out at closing time. She described the duties she performed each night after she clocked out and estimated that they took at least 30 minutes to complete. Doc. 42-14 at 25 & 86. The parties do not dispute that On Tap's records are accurate as to the days Gohn worked, and she is able to use those time sheets to identify the shifts when she performed extra work after clocking out. While she may not have any other documentation and cannot state with exactness the number of uncompensated hours she worked, the law does not require precision. For these reasons, Gohn has produced sufficient evidence to show the amount and extent of her uncompensated work.

### 2. *Employer's Knowledge*

Gohn also has established that On Tap had constructive knowledge of her unpaid work. An employer has constructive knowledge of its employee's overtime work when it has reason to believe that the employee is working beyond her shift. 29 C.F.R. § 785.11. The employer's knowledge "is measured in accordance with his duty . . . to inquire into the conditions prevailing in his business." *Allen*, 495 F.3d at 1319 (citations and quotation marks omitted).

Gohn testified that she was instructed by Stone, a manager of On Tap, to clock out as close to closing time as possible even if she had not completed all of her work for the night. Docs. 42-14 at 18–22 & 42-15 at 1. A former bartender, Seier, and a former manager, Shaw, confirmed this instruction. Docs. 42-17 at 28–29 & 42-20 at

14

12. Shaw also testified that one of the owners gave this directive to Stone to pass on to the employees. Doc. 42-17 at 28–29. The absence of testimony in the record from another employee who knowingly saw Gohn working off the clock is immaterial. In reviewing the extent of an employer's awareness, the Eleventh Circuit instructs the court "only [to] inquire whether the circumstances were such that the employer either had knowledge of . . . [extra] hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." *Reich v. Dep't of Cons. & Nat. Res., St. of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (emphasis omitted). At the summary judgment stage, the evidence before the court creates a question of fact as to knowledge on the part of the employer.

For these reasons, the court finds that summary judgment is inappropriate as to Gohn's FLSA claim. She presented evidence that "[s]he has in fact performed work for which [s]he was improperly compensated," as well as "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" and constructive knowledge on the part of her employer. *Anderson*, 328 U.S. at 687. Viewing the light in the most favorable to Gohn, a reasonable jury could find in her favor. Summary judgment is due to be denied.

### III. CONCLUSION

For these reasons, it is ORDERED as follows:

(1) Plaintiff's motion to strike (Doc. 45) is DENIED; and

(2)    Defendant's motion for summary judgment (Doc. 42) is DENIED.

DONE and ORDERED on October 8, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE